[Cite as *Myers v. Vandermark*, 2026-Ohio-2562.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

ROBERT B. MYERS, et al.,

Plaintiffs-Appellants,

v.

LUCRETIA VANDERMARK, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 HA 0004

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2022-0057

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. James F. Mathews*, Baker Dublikar, for Plaintiffs-Appellants Robert B. Myers and Albert W. Wright, Jr., Trustee

*Atty. Christopher W. Rogers*, *Atty. Kevin Colosimo*, FBT Gibbons, LLP, for Defendant-Appellee Ascent Resources-Utica, LLC

*Atty. Katherine M.K. Kimble*, *Atty. Nichole D. Hamsher*, Knight Miller Law, Ltd., for Defendant-Appellee Ohio University Foundation

*Atty. T. Owen Beetham,* Beetham Law Office, for Defendants-Appellees the McLaughlin Heirs

Dated:  June 30, 2026

---

**WAITE, P.J.**

{¶1}  Appellants Robert B. Myers and Albert W. Wright, Jr., Trustee, (collectively referred to as "Appellants") appeal an October 8, 2025 judgment entry of the Harrison County Court of Common Pleas granting summary judgment in favor of Appellees:  the McLaughlin Heirs, Ascent Resources-Utica, LLC ("Ascent") and The Ohio University Foundation ("OUF").  Appellants argue the trial court improperly determined that their earlier complaint, which unsuccessfully sought to reunite the surface and mineral interests by virtue of the Dormant Mineral Act ("DMA"), serves as a bar to a second action rooted in the Marketable Title Act ("MTA").  For the reasons that follow, Appellants' arguments have merit and the judgment of the trial court is reversed.  The matter is remanded for purposes consistent with this Opinion.

## Factual and Procedural History

{¶2}  This oil and gas action involved a large number of trial court defendants, most of whom are heirs to a mineral interest.  As no one heir has any legal impact on this matter, these heirs will not be individually named.  Instead, we collectively refer to them

as the "McLaughlin Heirs." (12/17/25 OUF Motion for Summary Judgment)  In addition to the McLaughlin Heirs, Ascent and OUF were also parties defendant in the trial court.

{¶3}  On March 7, 1921, Belle M. and Samuel K. McLaughlin conveyed the surface rights to 109 acres of land located in Shortcreek Township, Harrison County. However, the McLaughlins reserved "the coal . . . of Pittsburgh of Number Eight vein . . . [and] the oil and gas underlying said land."  (Second Amended Complaint, Exh. C) This reservation constitutes what is referred to as the "McLaughlin Interest."

{¶4}  Appellants obtained the surface rights to 59.679285 acres of this land.  The remaining acreage is not at issue, here, as it is not owned in any part by Appellants.  On December 17, 2012, Appellants filed a declaratory judgment and quiet title action claiming the McLaughlin Interest had been abandoned by virtue of the DMA.  The trial court initially granted summary judgment to Appellants.  However, we reversed that decision in *Myers v. Bedway Minerals Co*., 2017-Ohio-1255 (7th Dist.) ("Bedway.")  We remanded the matter, instructing the trial court to, instead, enter summary judgment in favor of Appellees on the DMA claims.  Following remand, the trial court issued an entry that states in full:

This matter came on before this Court upon Remand from the Seventh District Court of Appeals by way of Opinion filed March 29, 2017.

Said Opinion reverses this Trial Court's grant of Summary Judgment in

favor of Plaintiffs-Appellees and instructs this Court to enter Summary Judgment for Appellants. Pursuant to the same, this Court hereby grants Summary Judgment for Defendants-Appellants and against the Plaintiffs-Appellees in the case at bar.

(4/3/2017 J.E.)

{¶5} Thereafter, Appellants filed a new common pleas complaint on October 28, 2022. This new complaint involved the same interests and the same parties as the first, but now sought declaratory judgment rooted in MTA claims and did not reference the earlier DMA action. On March 17, 2023, Appellees filed a motion to dismiss the new case pursuant to Civ.R. 12(B)(7). The motion was based on Appellants' failure to join all necessary parties. On May 25, 2023, Appellants filed an amended complaint adding the necessary parties, but raising no new additional claims.

{¶6} On November 14, 2023, the trial court granted Appellees' motion to dismiss. That decision was reversed by this Court in *Myers v. Vandermark*, 2024-Ohio-3205 (7th Dist.) ("*Vandermark*"). Relevant to the issue at hand, we reviewed whether the trial court properly dismissed the matter pursuant to Civ.R. 12(B)(6) on the basis of *res judicata*. We held that dismissal pursuant to Civ.R. 12(B) solely on the pleadings was improper

because issues relevant to *res judicata* are more appropriately addressed during summary judgment. *Id*. at ¶ 29-30. The matter was remanded for further proceedings.

{¶7} Following remand, the parties engaged in summary judgment motion practice. Within their respective motions and responses, the parties addressed the issue of whether *res judicata* acted to bar Appellants from raising their MTA claim following resolution of their earlier complaint based on application of the DMA. On January 17, 2025, OUF filed a joint motion to dismiss and for summary judgment. On April 24, 2025, Ascent and Vandermark, on behalf of the McLaughlin heirs, also filed a motion for summary judgment. It does not appear that Appellants filed any competing motion for summary judgment following remand.

{¶8} On October 8, 2025, the trial court ruled in favor of Appellees, however, it is unclear whether its ruling was grounded in summary judgment or based on OUF's motion to dismiss. In general, the court determined that Appellants' original DMA complaint and the resulting final decision precluded them from now attempting to obtain ownership of the same mineral interests through application of the MTA. It is from this entry that Appellants timely appeal.

<u>Summary Judgment</u>

{¶9} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R.

56(C). *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist.1995).

{¶10} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn*., 122 Ohio App.3d 378, 386 (8th Dist.1997).

Case No. 25 HA 0004

**{¶11}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple* at 327.

<u>ASSIGNMENTS OF ERROR NOS. 1 & 2</u>

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' ACTION FOR EXTINGUISHMENT UNDER THE MARKETABLE TITLE ACT, INASMUCH AS A PRIOR DETERMINATION IN A DECLARATORY JUDGMENT ACTION REJECTING ABANDONMENT UNDER THE INDEPENDENT MECHANISM OF THE DORMANT MINERAL ACT, WAS NOT A BAR UNDER RES JUDICATA.

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLANTS' ACTION UNDER THE MARKETABLE TITLE ACT, SINCE A PRIOR DETERMINATION IN A DECLARATORY JUDGMENT ACTION REJECTING ABANDONMENT UNDER THE INDEPENDENT MECHANISM OF THE DORMANT MINERAL ACT, COULD NOT REVIVE AN ALREADY EXTINGUISHED INTEREST.

<u>Case No. 25 HA 0004</u>

{¶12} Appellants contend that neither dismissal of their current action nor summary judgment were appropriate, as the DMA and MTA are separate statutes that operate independently. Thus, a final determination on one has no preclusive effect on a determination regarding the other. Hence, an action based on the MTA can independently follow one based on the DMA without triggering application of *res judicata*. Appellants argue in the alternative that an exception to *res judicata* lies where a claim is rooted in declaratory judgment. Appellants assert that the trial court's judgment entry following remand did not quiet title in Appellees, and because a court speaks only through its entries, title was never quieted. With this in mind, Appellants claim that the original entry resulted only in a declaratory judgment, which does not prevent a second action to actually quiet title from being filed.

{¶13} Appellees each filed separate briefs but raise essentially the same arguments in response to the issues contained in Appellants' brief. They premise their responses on the fact that the parties litigated all counts of the first complaint, which included a request to quiet title, and the trial court granted summary judgment on all litigated claims in favor of Appellees. Thus, the claim involving quiet title has already been litigated and adjudicated. Even if it was not, which Appellees do not concede, they argue in the alternative that quiet title pursuant to the MTA could have been raised during

those earlier proceedings, which also acts to bar their current complaint based on the principles of *res judicata*.

> Under the doctrine of *res judicata*, a final judgment or decree upon the merits is deemed to be conclusive of the issues addressed in that case and bars a subsequent action between the parties to the previous suit, or those in privity with them, based on the same cause of action. *Columbus v. Union Cemetery Assoc.* (1976), 45 Ohio St.2d 47, 50, 341 N.E.2d 298. *Res judicata* applies to issues actually presented in the original action and to issues that could have been presented for adjudication. *McGinnis v. Donatelli* (1987), 36 Ohio App.3d 120, 121, 521 N.E.2d 513. The doctrine of *res judicata* is applied to prevent repeat attacks upon a final judgment. *Stromberg v. Bd. of Edn. of Bratenahl* (1980), 64 Ohio St.2d 98, 100, 413 N.E.2d 1184.

*Indian Creek Local School Dist. Bd. of Edn. v. Indian Creek Edn. Ass'n.*, 1996 WL 65933 (7th Dist. Feb. 12, 1996).

{¶14} "The four elements of res judicata or claim preclusion are (1) a prior valid judgment on the merits; (2) a second action involving the same parties; (3) the second action raises claims that were or could have been litigated in the first action; and (4) both

actions arise out of the same transaction or occurrence." *Talib v. Perkins Restaurant*, 2026-Ohio-445, ¶ 22 (7th Dist.), citing *Sheridan v. Metro. Life Ins. Co.*, 2009-Ohio-1808, ¶ 12 (10th Dist.); *Reasoner v. Columbus*, 2005-Ohio-468, ¶ 5; *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381-382 (1995).

**{¶15}** It appears that there is no debate, here, about the first and second elements. Appellants' arguments as to the remaining elements are centered on failure to enter an order quieting title. "Unlike other judgments, . . . 'a declaratory judgment determines only what it actually decides and does not preclude other claims that might have been advanced.' . . . Consequently, '[f]or a previous declaratory judgment, res judicata precludes only claims that were actually decided.' " *Vandermark* at ¶ 34, citing State ex rel. *Coles v. Granville*, 2007-Ohio-6057, ¶ 37. Hence, "[a]nalysis of this issue requires an examination of the prior proceedings, including what was included in the pleadings and what the court actually decided." *Vandermark* at ¶ 34, citing *Teays Valley Local School Dist. Bd. of Edn. v. Struckman*, 2023-Ohio-244, (4th Dist.)

**{¶16}** In reviewing this issue, it is helpful to remember that Appellees were the defendants in this matter. At the time Appellants filed their complaint, Appellees held apparent title to the mineral interests at issue and it was Appellants who were attempting to quiet title in themselves. Appellees, as defendants, were only required to defend their interest in the property. At the time the trial court granted summary judgment in favor of

Appellees following our remand, the court had no need to quiet title, as Appellees' status as apparent titleholders of the disputed property did not alter. It is unremarkable that the trial court's entry omitted any reference to quiet title, as any action in that regard was unnecessary.

{¶17} We also note that around the time the first complaint was filed in this matter, the MTA was not often, if at all, employed in cases involving mineral rights. Hence, while other complaints filed around that timeframe may have raised claims under both the MTA and DMA in oil and gas cases, it was certainly not done routinely. The strictures of the MTA had yet to be litigated or appreciated. Regardless, it is apparent from this record that the first action did not result in a judgment that specifically quieted title to the interests sought (for a second time) in this lawsuit.

{¶18} This matter highlights a problematic aspect of the MTA statute. The statute provides that minerals which are extinguished by operation of law under the MTA cannot be revived. However, although the statute provides that extinguishment occurs automatically and by operation of law, it is at odds with the actual process contained in the statute, itself. The MTA requires a landowner to file an action in a trial court and prove that extinguishment did, in fact, occur. Thus, while the extinguishment is intended to occur automatically by operation of law, a court of law is required to declare the interests are extinguished before the surface and mineral interests can be said to be reunited.

Case No. 25 HA 0004

{¶19} From this we are left to determine whether a claim to declare mineral interests extinguished (MTA) should have been raised with a claim to declare mineral interests have been abandoned (DMA). While Appellees reach the logical conclusion that both the DMA and the MTA operate to accomplish the same goal, to determine title to mineral interests, they operate very differently in effecting title. The question we are faced with in this matter is whether this difference in the effects of the two statutes negates the application of *res judicata*; that is, whether a complaint that solely raised DMA claims bars a second, subsequent complaint relying on the MTA. We are without the benefit of any caselaw to guide us on resolution of this issue.

{¶20} As noted by Appellees, for claimants the DMA and MTA each have the same goal: reuniting the surface and mineral interests. However, the process employed in reaching that goal is vastly different. Similar to the MTA, the DMA has provisions to allow mineral interest holders to preserve their interests within a specific timeframe.

{¶21} However, under the DMA, mineral interests are not abandoned by operation of the law. In fact, before an interest can be deemed abandoned, notice of intent to declare the interest abandoned must be served on any possible interest holder. Also unlike the MTA, interests attempted to be declared abandoned by virtue of the DMA can be preserved: if "the mineral-interest holder takes positive steps to reaffirm his or her interest upon receiving notice, then that interest is active, not dormant, and the surface

owner is not entitled to take the mineral-interest holder's property." *Fonzi v. Brown*, 2022-Ohio-901, ¶ 16. The *Fonzi* Court explained "[i]f it were otherwise, then even upon receiving notice, a mineral-interest holder would be left without recourse." *Id.* The Ohio Supreme Court went so far as to state: "[w]e have never suggested that a claim to preserve is meaningless under the DMA when 20 years has elapsed without a saving event." *Id.* at ¶ 19. Hence, an interest that appears to have been abandoned and forever lost may actually be revived and preserved under the provisions of the DMA. Not so, the MTA. Under the MTA, an interest holder may have their interest automatically extinguished. The MTA declares that once extinguished, the interest may never be revived. Legal action under the MTA is necessary solely for the purpose of confirming the reunification of mineral interests to the surface interests that has already occurred and any previously held interests cannot be revived, by operation of law. The DMA does allow an interest holder to preserve their interest after failing to effectuate a savings event within the relevant time period.

{¶22} Because the DMA is two-part, containing provisions that provide for a twenty-year period without a savings event *and* a notice requirement, and the MTA requires only a forty-year period which results in automatic extinguishment by operation of law, the two claims are not the same. The DMA provides an avenue for interest holders to take action to preserve their claims. The MTA requires legal confirmation that an

interest has been permanently extinguished. Assuming arguendo, that in this case Appellants are entitled to such confirmation under the MTA, any attempts by Appellees to preserve said interests pursuant to the DMA are for naught, as they have no effect whatsoever on any claims that have already been extinguished by operation of the law contained in the MTA. The claims raised in Appellants' second complaint cannot be said to have arisen from the same transaction or "occurred" as the claims raised in their first complaint. Further, to now prohibit Appellants from raising their MTA claims would run afoul of the strictures of that statute. It would serve to permit Appellees to revive their interests in the property even though, if Appellants are correct, that interest has been forever extinguished. Thus, while it would certainly promote judicial economy for these parties to have raised both the MTA and DMA in a single complaint, a party is not barred by *res judicata* from raising at least its MTA claim in a successive complaint. Regardless of whether the trial court granted summary judgment to Appellees or sustained their motion to dismiss, Appellants' first and second assignments of error have merit and are sustained.

## Conclusion

{¶23} Appellants contend that their first complaint, seeking quiet title and declaratory judgment, does not bar their second claim asking for declaratory judgment because the trial court did not expressly quiet title to the mineral interests at issue in the

first action. Alternatively, Appellants argue that the DMA and MTA operate independently, and a complaint based on one does not bar a complaint based on the other. For the reasons provided, Appellants' argument has merit and the judgment of the trial court is reversed and remanded for further proceedings consistent with this Opinion.

Robb, J. concurs.

Dickey, J. concurs.

---

For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is reversed. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**